UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARY HOLLEN, a single woman,<br><br>                 Plaintiff,<br><br>     v.<br><br>STEPHEN CHU, SECRETARY, UNITED<br>STATES DEPARTMENT OF ENERGY<br><br>                 Defendant. | No.  CV-11-5045-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO EXCLUDE AS MOOT** |

## I.    INTRODUCTION

Before the Court, without oral argument, is Defendant Stephen Chu's Motion for Summary Judgment, ECF No. 50, and Motion to Exclude Expert Testimony, ECF No. 57.  In his Motion to Exclude, Defendant asks the Court to exclude opinion testimony from two proposed witnesses: Plaintiff Mary Hollen's treating physician, Dr. Barbara Atwood; and a human resources expert, Judith Clark.  ECF No. 57.  In his Motion for Summary Judgment, Defendant asks the Court to grant summary judgment on Plaintiff's disability discrimination and constructive-discharge claims.  ECF No. 50.  Plaintiff opposes both motions.  Having reviewed the pleadings and the record in this matter, the Court is fully informed.  For the reasons set forth below, the Court denies in part, grants in part, and ultimately denies as moot

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 1

1 Defendant's Motion to Exclude; and grants Defendant's Motion for

2 Summary Judgment.

3 **II.   BACKGROUND[1]**

4 **A.   Factual Background**

5    Plaintiff — a certified public accountant — began working for

6 the U.S. Department of Energy (DOE), Bonneville Power Administration

7 (BPA), on January 3, 1989, and continued working with BPA until 2006.

8 ECF No. 79, ¶¶ 1, 4.  Plaintiff began her work with BPA in Portland,

9 Oregon, but transferred to Richland, Washington in 1994.  *Id*. at ¶¶ 2,

10 4.  While working for BPA in Richland, Plaintiff was part of the team

11 that marketed the nuclear power produced at the Hanford Nuclear

12 Reservation.  *Id*. at ¶¶ 5-8.

13    Plaintiff was diagnosed with asthma in 1995 or 1996, and she

14 alleges that her asthma qualifies as a disability under the

15 Rehabilitation Act, 29 U.S.C. §§ 791, *et seq.*, and the Americans with

16 Disabilities Act (ADA), 42 U.S.C. §§ 12111, *et seq*.  Compl. ECF No. 1,

17 at 3-4.  In 2006, Plaintiff left her job with BPA because she believed

18 her asthma required specific working conditions that Defendant was not

19 willing to provide.  *Id*. at 4.  Specifically, Plaintiff wanted

---

[1]   In considering Defendant's summary judgment motion and reciting the relevant factual history, the Court 1) believed the undisputed facts and the non-moving party's evidence, 2) drew all justifiable inferences therefrom in the non-moving party's favor, 3) did not weigh the evidence or assess credibility, and 4) did not accept assertions made by the non-moving party that were flatly contradicted by the record.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); Scott v. Harris, 550 U.S. 372, 380 (2007).

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 2

permission from BPA to telecommute full-time from Whidbey Island, Washington. *Id.* When Defendant refused this request, Plaintiff voluntarily resigned from her position. ECF No. 79, ¶¶ 302, 356.

The impetus for Plaintiff's request to move to Whidbey Island was the climate and allergens present in the Tri-Cities area, as well as the air quality at her workplace in Richland. *Id.* at ¶¶ 93-96, 121, 356, & 358. Certain allergens caused Plaintiff to experience asthmatic episodes, and many of these allergens — like dust, pollen, and perfume — were present at Plaintiff's workplace. Pl.'s Aff., ECF No. 52-5, at 3. In addition, Plaintiff believed that the dry climate in the Tri-Cities further aggravated her condition. *Id.* at 7.

During an asthmatic episode, Plaintiff claims that she suffers from shortness of breath, exhaustion, and "full-blown" asthma attacks. *Id.* at 3. Plaintiff coughs uncontrollably and struggles to breathe when she has an asthma attack, and has to use an inhaler in order to assuage these symptoms. *Id.* Plaintiff's asthma also makes it difficult for her to sleep, work in certain locations, and go outside. *Id.* at 4-6. As such, Plaintiff and her treating physician, Dr. Barbara Atwood, believed that a move from the Tri-Cities area would help her avoid these asthmatic triggers. ECF No. 79, ¶¶ 162-175.

Because these triggers were generally more present when coworkers were around the office, Plaintiff began going into work early in the morning during 2005; however, on occasion, Plaintiff still had to leave the office by midday and work from home because of asthma flare-ups. *Id.* at ¶ 99. It is not clear exactly how often Plaintiff had to leave and work from home, but her timecards indicate

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 3

she did not telecommute at all in 2003 or 2004, and she used a total of 125 hours in 2005. *See* ECF No 52-8. Of those 125 hours, 103.5 were used after Plaintiff made her request for accommodation in October 2005. *Id.* Plaintiff's use of telecommuting time did not affect her performance evaluations; she received a rating of "Successful" for all critical elements of her job on her 2004 and 2005 evaluations. ECF No. 51-7.

Outside of work, it appears that Plaintiff attempted to maintain a fairly active lifestyle despite her problems with asthma. Her calendars and deposition testimony indicate that she participated in nineteen different skiing, hiking, and climbing outings in 2004 and 2005. ECF No. 79, ¶ 110. Plaintiff complained that her asthma made maintaining this type of lifestyle difficult and exercise often led to a worsening of her symptoms, *id.* at ¶¶ 84-85, 90-92, 100-101; but there is also some indication that hiking and breathing fresh air helped assuage Plaintiff's symptoms, *id.* at ¶¶ 131-132.

The medical records and information provided by Dr. Atwood regarding Plaintiff's condition in 2005 indicate that the severity of her asthma was constantly in flux. On June 8, 2005, Dr. Atwood found that Plaintiff had uncontrolled, exercise-induced asthma, *id.* at ¶ 101; on September 7, 2005, Dr. Atwood noted that Plaintiff's asthma had improved to the point that she could hike as long as she stayed away from allergens and used an inhaler, *id.* at ¶ 119; on October 31, 2005, Dr. Atwood wrote a letter to BPA indicating that Plaintiff had "severe asthma" that could not improve with even "maximum medical treatment," ECF No. 51-6, at 320; finally, on November 25, 2005, Dr.

1   Atwood indicated that Plaintiff was showing no signs of asthma

2   exacerbation, *id.* at 322.    In regards to objective medical measures,

3   Dr. Atwood testified that a normal peak flow for someone of

4   Plaintiff's age and physical characteristics was 400-450.[2]    ECF No.

5   79, ¶ 51.    In 2005, Dr. Atwood measured Plaintiff's peak flow on six

6   different occasions.    *See* ECF No. 51-6, at 298-326, 349.    During one

7   appointment, Plaintiff's peak flow was measured at 390 — a range that

8   Dr. Atwood still described as "within the normal range," ECF No. 79, ¶

9   92; on the other five occasions, her peak flow was above 400.

10      Plaintiff made her first request for accommodation to BPA in

11  July 2005, she canceled this request in August, and then renewed it in

12  September.    *Id.* at ¶¶ 109, 111, & 114.    On October 6, 2005, Plaintiff

13  informed her supervisor, Andrew Rapacz, that she was requesting

14  accommodation — because of her asthma — that would allow her to

15  telecommute full-time from a remote location outside the Richland

16  office.    *Id.* at ¶¶ 142-144.    Plaintiff informed BPA on November 14,

17  2005, that she needed to move to a location "north of Seattle, west of

18  Everett, east of Port Angeles and south of the San Juan Islands." *Id.*

19  at ¶¶ 210-211.    Mr. Rapacz denied this request in writing on November

20  28, 2005, ECF No. 79, ¶ 226; three days later, Plaintiff submitted her

21  application for retirement, *id.* at ¶ 302.    Plaintiff twice requested

22

23      [2]   Peak flow refers to the speed of the expiration of airflow through the

24      bronchi, measured with a peak flow meter. ECF No. 79, ¶ 49. Physicians

25      commonly measure a patient's peak flow in order to determine the

        severity of asthmatic symptoms.

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 5

1  reconsideration of the decision to deny her request for accommodation;

2  both requests were also denied.  *Id.* at ¶¶ 309, 320, & 339-340.

3  Plaintiff retired on March 30, 2006.  *Id.* at ¶ 356.

4  **B.    Procedural Background**

5       Plaintiff filed her Complaint in the present case on March 15,

6  2011 — 90 days after exhausting her administrative remedies.  ECF No.

7  1.  Plaintiff asserts that her asthma qualifies as a disability under

8  the Rehabilitation Act; therefore, DOE and BPA had a duty to

9  reasonably accommodate her condition.  According to Plaintiff, by

10 repeatedly denying her requests to telecommute full-time, the DOE and

11 BPA failed to meet the reasonable accommodation standards outlined in

12 the Rehabilitation Act and the ADA.  Furthermore, Plaintiff alleges

13 that this failure to accommodate essentially forced her into early

14 retirement; as such, she has also brought a constructive-discharge

15 claim.  Defendant moved for summary judgment on both of these claims,

16 ECF No. 50; Plaintiff opposes that motion.

17      To support the claims filed in her Complaint, Plaintiff plans to

18 call two expert witnesses — Dr. Atwood and Judith Clark.  Dr. Atwood

19 was Plaintiff's treating physician, and Ms. Clark is a human resources

20 expert with knowledge of the various processes that employers must

21 take to reasonably accommodate individuals with disabilities.

22 Defendant has moved to exclude testimony from both of these witnesses

23 through a *Daubert* motion.  ECF No. 57.  Plaintiff opposes that motion.

24 //

25 /

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 6

1

### III. STANDARDS

2   **A.   Expert Testimony**

3         Federal Rule of Evidence 702 governs the admission of "expert

4   testimony":

5              If scientific, technical, or other specialized knowledge
              will assist the trier of fact to understand the evidence or
6              to determine a fact in issue, a witness qualified as an
              expert by knowledge, skill, experience, training, or
7              education, may testify thereto in the form of an opinion or
              otherwise.

8
   In *Daubert v. Merrell Dow Pharmaceuticals*, the Supreme Court

9   identified that the district court has a "gatekeeping responsibility"

10  in regards to expert testimony.  509 U.S. 579 (1993); *Gen. Elec. Co.*

11  *v. Joiner*, 522 U.S. 136 (1997).  Following in *Kumho Tire Co. v.*

12  *Carmichael*, 526 U.S. 137, 149 (1999), the Supreme Court stated, "where

13  such [expert] testimony's factual basis, data, principles, methods, or

14  their application are called sufficiently into question, . . . the

15  trial judge must determine whether the testimony has 'a reliable basis

16  in the knowledge and experience of [the relevant] discipline.'"

17  **B.   Summary Judgment**

18        Summary judgment is appropriate if the record establishes "no

19  genuine dispute as to any material fact and the movant is entitled to

20  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party

21  opposing summary judgment must point to specific facts establishing a

22  genuine dispute of material fact for trial.  *Celotex Corp. v. Catrett*,

23  477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*

24  *Corp.*, 475 U.S. 574, 586-87 (1986).  If the non-moving party fails to

25  make such a showing for any of the elements essential to its case for

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 7

1 which it bears the burden of proof, the trial court should grant the

2 summary judgment motion. *Celotex Corp.,* 477 U.S. at 322.

3 **C.   Failure to Accommodate**

4    The legal standard for an action arising under the

5 Rehabilitation Act is the same standard used in claims arising under

6 the ADA.  29 U.S.C. § 791(g); *Vinson v. Thomas,* 288 F.3d 1145, 1152 n.

7 7 (9th Cir. 2002).   To establish a failure to accommodate claim under

8 the Rehabilitation Act and the ADA, a Plaintiff must show that: 1)

9 plaintiff has a disability within the meaning of the ADA; 2) the

10 defendant has notice of the disability; 3) with a reasonable

11 accommodation, the plaintiff could perform the essential functions of

12 the desired position; and 4) the federal employer has refused to make

13 such accommodation.  *Stone v. City of Mt. Vernon*, 118 F.3d 92, 96-97

14 (2d Cir. 1997).

15                    **IV.   <u>ANALYSIS</u>**

16 **A.   Motion to Exclude**

17    1.   <u>Dr. Atwood's Testimony</u>

18    Defendant seeks to exclude testimony regarding two of Dr.

19 Atwood's opinions.  First, Defendant attacks Dr. Atwood's opinion that

20 Plaintiff suffers from "severe asthma" on the grounds that Dr. Atwood

21 has not provided sufficient facts and data to support that opinion.

22 ECF No. 57, at 3.   Second, Defendant asks this Court to exclude any

23 testimony regarding Dr. Atwood's opinion as to why Plaintiff needed to

24 move out of the Tri-Cities on the grounds that Dr. Atwood does not

25 have sufficient expertise to make such a conclusion.  *Id.*

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 8

1       The main focus of a *Daubert* motion is the reliability of a

2  proposed expert's testimony. *See Daubert*, 509 U.S. 579, 589, (1993)

3  ("[T]he trial judge must ensure that any and all scientific testimony

4  or evidence admitted is not only relevant, but reliable."). Dr.

5  Atwood's expertise is in internal medicine, and she was Plaintiff's

6  treating physician in 2005 and 2006, ECF No. 41-1; as such, she is

7  clearly qualified to present testimony regarding her conclusions as to

8  the severity of Plaintiff's asthma. With that being said, Defendant's

9  concerns about the underlying facts and data supporting Dr. Atwood's

10  conclusion that this asthma was "severe" go toward the weight, not the

11  admissibility, of Dr. Atwood's conclusion. If this matter proceeds to

12  trial, Plaintiff will be given the opportunity to lay the necessary

13  foundation to meet the standards set forth by Rule 702 for Dr.

14  Atwood's conclusions.

15       This Court also has concerns with the admissibility of Dr.

16  Atwood's testimony regarding her conclusion that Plaintiff needed to

17  move outside the Tri-Cities. Dr. Atwood is unquestionably a well-

18  qualified medical expert, *see* ECF No. 41-1, Ex. A; however, it is not

19  clear that Dr. Atwood has the necessary expertise to provide a

20  conclusion on the impact that various climates would have on asthma.

21  With that potential limitation in mind, Dr. Atwood has been treating

22  patients with asthma for a number of years, and as a resident of the

23  Tri-Cities area, it is not unreasonable to conclude that she would

24  have knowledge of the climate in this area and the effect that climate

25  has on her asthma patients. Therefore, as long as Dr. Atwood can lay

26  the necessary foundation and her testimony stays within the confines

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 9

1   of her medical opinion as Plaintiff's treating physician, this

2   testimony will likely be admissible.

3        The majority of Defendant's concerns with this testimony are

4   best taken up on cross-examination.   Because questions remain

5   regarding Dr. Atwood's ability to lay foundation, however, this Court

6   would hold this portion of Defendant's motion in abeyance if this

7   lawsuit were to proceed to trial.

8        2.   <u>Ms. Clark's Testimony</u>

9        Ms. Clark's expert report addresses three questions: 1) Did

10  BPA/DOE meet the requirements of the ADA in engaging Plaintiff in the

11  Interactive Process?; 2) did BPA/DOE appropriately assess Plaintiff's

12  situation in response to her request for accommodation?; and 3) did

13  BPA/DOE establish that Plaintiff's requested accommodation was

14  unreasonable? *See* ECF No. 41-2.   Defendant seeks to exclude Ms. Clark

15  from testifying entirely on the grounds that each of these opinions

16  goes toward the ultimate issue of law and unreasonably invades the

17  province of judge and jury. *See* ECF No. 57, at 7.

18       Expert testimony is admissible only if it will assist the trier

19  of fact to understand the evidence or to determine a fact in issue.

20  Fed. R. Evid. 702.   An expert may not go so far as to make legal

21  conclusions or opinions on the ultimate issue of law. *See Hangarter*

22  *v. Provident Life & Ins Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).

23  Furthermore, instructing the jury as to the applicable law is "the

24  distinct and exclusive province" of this Court.   *United States v.*

25  *Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993).

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 10

1    The Court excludes Ms. Clark's proposed opinion testimony

2 because it invades the province of the jury; however, this does not

3 mean that her testimony is entirely inadmissible. As long as Ms.

4 Clark avoids usurpation of this Court's role in instructing the jury,

5 her unique expertise in human resources qualifies her to explain: 1)

6 what the "interactive process" is, 2) what a "reasonable

7 accommodation" looks like, and 3) how employers typically engage in

8 the process of accommodating disabled employees. Ms. Clark may also

9 testify as to what steps Plaintiff and Defendant took during the

10 attempted accommodation process. This testimony could assist the

11 trier of fact insofar as it would help to make sense of certain

12 concepts that would likely be foreign to a jury.

13    Once Ms. Clark's testimony turns from explaining these processes

14 in general terms toward concluding that Defendant did not meet the

15 requirements established by law, she invades the province of the jury

16 by providing improper legal conclusions. In a failure-to-accommodate

17 claim, the question of whether or not Defendant properly complied with

18 the accommodation process is the precise question the jury must

19 answer. As such, Ms. Clark will not be allowed to testify to any

20 conclusions that touch on that issue.

21    Insofar as Defendant's motion seeks to exclude Ms. Clark from

22 testifying, the motion is denied; however, the Court grants the

23 portion of Defendant's motion regarding the exclusion of Ms. Clark's

24 opinion testimony.

25 //

26 /

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 11

**B.    Summary Judgment**

Defendant seeks summary judgment on Plaintiff's failure-to-accommodate and constructive-discharge claims. Even when considering Plaintiff's proposed expert testimony, her claims fail to survive summary judgment for the reasons set forth below.

1.    <u>Plaintiff's Asthma</u>

Plaintiff alleges that her asthma qualifies as a disability under the Rehabilitation Act because that condition is a physical impairment that substantially limits her major life activities of breathing and working. The Rehabilitation Act uses the ADA meaning of "disability" found in 42 U.S.C. § 12102, meaning the Plaintiff must have a physical or mental impairment that "substantially limits" a major life activity. Generally, if a plaintiff's impairment significantly restricts the "condition, manner, or duration" under which the plaintiff can perform a major life activity, and the average person does not have a similar difficulty with that life activity, then the plaintiff's impairment satisfies the "substantially limits" test. *Humphrey v. Mem'l Hosps. Ass'n,* 239 F.3d 1128, 1135 (9th Cir. 2001). Summary judgment is appropriate on a failure-to-accommodate claim when "the non-moving party has failed to present sufficient evidence to enable a trier of fact to find that a plaintiff's impairment limited him or her substantially." *Thompson v. Holy Family Hosp.,* 121 F.3d 537, 540-541 (9th Cir. 1997).

Plaintiff's asthma certainly qualifies as a physical impairment; however, that impairment is not a disability because Plaintiff has failed to provide sufficient evidence to establish a triable issue of

1    material fact as to whether that asthma substantially limits the major

2    life activities of breathing and working.    First, there is

3    insufficient evidence showing that Plaintiff is substantially limited

4    in her ability to work when compared to the average individual.    To be

5    substantially limited in the life activity of working, Plaintiff must

6    show that she is precluded from a "substantial class of jobs" or

7    "broad range of jobs" because of her condition.    *EEOC v. United Parcel*

8    *Serv., Inc.*, 424 F.3d 1060, 1082 (9th Cir. 2005).    Plaintiff alleges

9    that exposure to certain allergens causes her asthma to flare up;

10   therefore, if there is any "class of jobs" that she could not perform,

11   it would have to be one that would expose her to allergens.    These

12   allergens were present at Plaintiff's workplace with BPA, but she has

13   not shown that she was unable to perform her work in this environment.

14   Occasionally, Plaintiff had to go home and telecommute because of the

15   asthmatic triggers present at her workplace, but she was still able to

16   work from home.    In fact, in 2004 and 2005, Plaintiff received

17   satisfactory performance evaluations, she worked full-time, and there

18   is very little — if any — objective evidence showing that her asthma

19   caused her to miss significant periods of work in the months leading

20   up to the point where she made her request for accommodation.    *See*

21   Pl.'s Timecards, ECF No 52-8; Performance Evaluations, ECF No. 51-7.

22   As such, there is no indication that she could not perform her own

23   job, let alone an entire "class of jobs" or "broad range of jobs."

24   Therefore, Plaintiff presented insufficient evidence to establish a

25   triable issue of material fact as to whether her asthma substantially

26   limited her major life activity of working.

There is also no evidence to establish a triable issue of material fact as to whether Plaintiff's asthma substantially limits the life activity of breathing.  Dr. Atwood claims that Plaintiff has "severe asthma," ECF No. 51-6, at 320, but that vague diagnosis does not mean that impairment substantially limits the life activity of breathing.  Generally, "suffer[ing] from occasional asthma attacks" is not enough to show that asthma is a substantial limitation on the life activity of breathing.  *Russell v. Clark Cnty. Sch. Dist.*, 232 F.3d 896, at *3 (9th Cir. 2000).  Instead, "the proper inquiry . . . is whether [a] plaintiff's breathing as a whole is substantially limited *for purposes of her daily living*.  *Darnell v. Principi*, 2004 WL 1824120, at *5 (D. Ore. 2004) (emphasis added).  Plaintiff established that there were occasions when she would have such difficulty breathing in the workplace that she would have to go home from work.  ECF No. 79, ¶ 99.  However, those difficulties do not show that Plaintiff's asthma pervaded the rest of her everyday life activities.  In fact, Plaintiff's calendar and her deposition testimony reveal a number of hiking, climbing, and skiing trips that she took in 2004 and 2005 — which suggests she maintained a very active lifestyle.  *Id.* at ¶ 110.  Plaintiff also alleges that her asthma makes it difficult to breathe in a particular climate, *id.* at ¶ 121, but she does not deny that there are other climates in which she believes she would have no trouble, *id.* at ¶¶ 122, 128, 131-132, 137-140, & 210-211.  Finally, the medical evidence from Dr. Atwood shows that Plaintiff's peak flow rating was consistently within the normal range, *see* ECF No. 51-6, at 298-326, 349, which suggests that Plaintiff's ability to breathe was

1   not substantially different from the average person. While

2   Plaintiff's asthma may be occasionally debilitating in the workplace,

3   in certain climates, or when exposed to certain allergens, there

4   simply is not sufficient evidence for a jury to conclude that

5   Plaintiff struggled to breathe as a part of her daily life.

6       Because Plaintiff failed to present sufficient evidence to

7   establish a triable issue of material fact as to whether she was

8   substantially limited in the major life activity of working or

9   breathing, her Rehabilitation Act and ADA claims fail to survive

10  summary judgment.   Summary judgment in Defendant's favor is granted in

11  this regard.

12      2.   <u>Reasonable Accommodation</u>

13      Even if Plaintiff's asthma qualified as a disability, Plaintiff

14  failed to establish a triable issue of material fact as to whether

15  Defendant failed to reasonably accommodate her disability.   Reasonable

16  accommodations are: "[m]odifications or adjustments to the work

17  environment, or to the manner or circumstances under which the

18  position held or desired is customarily performed, that enable an

19  individual with a disability who is qualified to perform the essential

20  functions of that position."   29 C.F.R § 1630.2(o)(1)(iii).   Under

21  these guidelines, the Ninth Circuit held that "[a]n appropriate

22  reasonable accommodation must be effective in enabling the employee to

23  perform the duties of the position." *Humphrey*, 239 F.3d at 1137.   To

24  defeat a motion for summary judgment, a plaintiff must show that a

25  proposed accommodation is reasonable on its face, which means it must

26  be "feasible" or "plausible" for the employer. *U.S. Airways, Inc. v.*

1  Barnett, 535 U.S. 391, 201-02 (2002).  To achieve this goal of

2  providing reasonable accommodation, federal courts require employers

3  to engage in an interactive process with a disabled employee once a

4  request for accommodation has been made.  *Zivkovic v. S. Cal. Edison*

5  *Co.,* 302 F.3d 1080, 1089 (9th Cir. 2002).  This interactive process

6  requires: "1) direct communication between the employer and employee

7  to explore in good faith the possible accommodations; 2) consideration

8  of the employee's request; and 3) offering an accommodation that is

9  reasonable and effective."  *Id.*

10        The evidence submitted establishes that Defendant properly

11 engaged in the interactive process.  Plaintiff informed her supervisor

12 that she was requesting accommodation in early October 2005, ECF No.

13 79, ¶¶ 140, 142, and that request was denied on November 28, 2005, *id.*

14 at ¶ 226.  Plaintiff's lone argument in support of her claim that

15 Defendant did not act in good faith was that her supervisor, Mr.

16 Rapacz, began drafting his letter denying Plaintiff's request only

17 four days after Dr. Atwood submitted medical documentation on

18 Plaintiff's behalf.  *See* ECF No. 67, at 17.  This merely proves that

19 Mr. Rapacz created a document rather quickly after receiving the

20 necessary medical information.  There is no information regarding what

21 he wrote at this point in time, and Plaintiff has no evidence to

22 support her argument that this means Mr. Rapacz had already made up

23 his mind without giving her request adequate consideration.  In fact,

24 the record shows a number of meetings and discussions between

25 Plaintiff and Defendant regarding her request for accommodation, and

26 BPA officials also spent time outside these meetings reviewing and

discussing Plaintiff's request.    ECF No. 79, ¶¶ 142-144, 146, 151, 153, 178-180, 183, 185, 210-212, 234-237, & 286-287.    Furthermore, Defendant had accommodated Plaintiff in the past by reorganizing her office, *id.* at ¶¶ 67, 71, Defendant modified Plaintiff's telecommuting agreement, *id.* at ¶¶ 68, 70, 72; ECF No. 52-1, at 252-253, and it actively searched for other positions which would meet her requirement of telecommuting full-time from Whidbey Island.    ECF No. 79, ¶¶ 296-300.    Plaintiff's self-serving argument that Mr. Rapacz and Defendant failed to engage in the interactive process simply finds no support in the record and is insufficient to establish a triable issue of material fact as to the reasonableness of Defendant's accommodations.

The uncontroverted testimony from BPA employees shows that Defendant carefully thought through Plaintiff's request before ultimately denying it because it would not have allowed Plaintiff to perform the essential functions of her job.    As a general rule, the Plaintiff bears the burden of showing she could perform the essential functions of her job if the requested accommodation was granted.    *See U.S. Airways*, 535 U.S. at 400.    "Essential functions" cover the "fundamental" duties of a job, but they do not extend to the "marginal" responsibilities of a position.    29 C.F.R. § 1630.2(n)(1). Face-to-face contact was an important part of Plaintiff's job description.    Plaintiff had ninety-four meetings scheduled on her calendar in 2004, and seventy-seven in 2005.    ECF No. 79, ¶ 251; ECF No. 51-5, EX. A.    Plaintiff contends that she did not attend all of these meetings, but she requested reimbursement for fourty-one meetings to which she drove in 2004 and twenty-nine meetings for the

first nine months of 2005.  ECF No. 79, ¶ 250.  Even if the importance
of interpersonal interactions in her own office is cast aside, this
averages out to over three offsite meetings per month.  When an
essential function of the job is "interacting with
personnel . . . both inside and outside the [workplace]," an employer
is not required to allow an employee to work from home.  *Robinson v.*
*Bodman*, 333 Fed. Appx. 205, 208.  Not only would Defendant have to
allow Plaintiff to work from home full-time in order to appease her
request, Defendant would be allowing her to work from a home that was
hundreds of miles away from their nearest office.  BPA has no presence
anywhere near Whidbey Island.  Allowing Plaintiff to telecommute full-
time from such a remote location would substantially inhibit her
ability to attend meetings and have in person interactions, and it
would be extremely burdensome on Defendant.

Furthermore, the accommodations that Defendant was willing to
provide were reasonable.  Defendant offered Plaintiff up to twenty
hours per week of telecommuting time, but Plaintiff never took
advantage of this time.  ECF No. 52-8.  Plaintiff worked forty hour
weeks, meaning half of her work day could have been spent at home
where Plaintiff admitted she could work with less impact on her
asthma.  After Defendant denied Plaintiff's request, they continued to
try and help Plaintiff find more suitable work.  ECF No. 79, ¶¶ 296-
300.  Plaintiff, however, was only willing to accept work that allowed
her to work under unreasonable conditions in an unreasonable location.
When viewing the evidence in the light most favorable to the
Plaintiff, the Court finds Plaintiff fails to establish a triable

1   issue of material fact as to whether Defendant failed to engage in the

2   interactive process in good faith.    Therefore, Defendant is granted

3   summary judgment as to Plaintiff's disability discrimination claim.

        3.    <u>Constructive Discharge</u>

5           Plaintiff's    constructive-discharge    claim    is    meritless.    To

6   succeed on a constructive-discharge claim, a plaintiff must show that

7   the    working    conditions    have    deteriorated,    "as    a    result    of

8   discrimination,    to    the    point    that    they    become    sufficiently

9   extraordinary and egregious." *Hardage v. CBS Broad., Inc.*, 427 F.3d

10  1177, 1185 (9th Cir. 2005) (emphasis removed).    Constructive discharge

11  occurs when an individual "has simply had enough." *Draper v. Coeur

12  Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998).    The situation

13  must be so "extraordinary and egregious" that a "competent, diligent,

14  and reasonable employee" would lose the motivation to remain on the

15  job.    *Poland v. Chertoff,* 494 F.3d 1174, 1184 (9th Cir. 2007).

16  Plaintiff retired voluntarily, and she was able to continue to work

17  for four months after she asked for accommodation.    Furthermore, as

18  pointed out above, Plaintiff was given additional telecommuting hours

19  that she did not take advantage of, which suggests that her time at

20  work could not have been overly intolerable.    Though Plaintiff

21  documented her struggles with asthma in the workplace throughout the

22  record, she has not pointed out any evidence that suggests that her

23  situation was so "extraordinary and egregious" that a normal person

24  would    have    lost    all    motivation    to    remain    at    work    in    such    an

25

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 19

1  environment.[3]    Accordingly, even when viewing the evidence in the

2  light most favorable to Plaintiff, Defendant is entitled to summary

3  judgment on this claim.

4                        **V.    CONCLUSION**

5       Although portions of testimony from Dr. Atwood and Ms. Clark

6  would likely be admissible at trial, their proffered testimony is not

7  sufficient to allow Plaintiff to survive summary judgment.    The

8  evidence, when viewed in Plaintiff's favor, fails to establish that

9  her asthma substantially limit a major life activity, and even if it

10 did, Plaintiff fails to show that Defendant failed to engage in the

11 interactive process or provide her with a reasonable accommodation.

12 Accordingly, **IT IS HEREBY ORDERED**:

13      1.    Defendant's Motion for Summary Judgment, **ECF No. 50**, is

14            **GRANTED.**

15      2.    Defendant's Motion to Exclude, **ECF No. 57**, is **DENIED AS**

16            **MOOT.**

17      3.    The Clerk's Office is directed to enter **JUDGMENT** in

18            Defendant's favor with prejudice.

19      4.    All pending deadlines and hearings are **STRICKEN.**

20 ///

21

22 _____

23      [3]  Defendant raised issues regarding the insufficiency of the pleadings in
            regard to Plaintiff's constructive-discharge claim.    *See* ECF No. 50, at

24           33-34.    This argument is untimely and ultimately unnecessary because
            this portion of Plaintiff's claim is dismissed under summary-judgment

25           standards.

26

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 20

5.   The Clerk's Office shall **CLOSE** this file.

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this  19th  day of September 2013.

s/ Edward F. Shea
_____
EDWARD F. SHEA
Senior United States District Judge

Q:\EFS\Civil\2011\5045.msj.daubert.lc1.docx

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION TO EXCLUDE AS MOOT- 21